Our next case is Pernix Federal, LLC v. U.S. 24-2327. Counselor Howell, you reserve three minutes of your rebuttal time. Just as a preliminary matter, we did receive the letter from the government notifying us that the patent had been, excuse me, that the bid had been withdrawn. That raises the issue of whether your case has been mooted or not, and we'd like for you to address that issue first. And that came by way of a motion, and we'll rule on that motion today. I'm sorry, Your Honor, you'll rule on a motion when? Today. Oh, today. As part of our case, yeah. Thank you. Well, Pernix Federal, LLC clearly does not believe that this appeal is moot. We believe that a live controversy exists because PFL is entitled to a $1.5 million stipend under Section L.10 of the terminated contract. Now, do I understand correctly that that is a claim that's currently pending in front of maybe the contracting officer? No, it is not. It is not. We would have to file a certified claim, go through the Contract Disputes Act process. Something's pending in front of the State Department, right? What's that? Something is pending in front of the State Department. Well... You submitted a letter in May of 2024... Yes. ...seeking recovery of costs related to your bid preparation proposal. That is correct. It has not been acted on. Under Section L.10, right? Correct. Correct, Your Honor. So that is... there is something pending. And part of, you know, your complaint with the State Department is that they haven't yet decided that on your request, submitted in that letter. You know, that is correct. That is correct. I would add, too, that Pernix's complaint asks for such other and further relief, you know, as the Court may deem just and proper. But I want to make it clear that at this point, Pernix has not filed a certified claim under the CDA, you know, for this amount. So... I think the important... Go ahead. I'm sorry. I just want to clarify. The important thing is that this issue that you've identified as being an issue that it's important for us to hear this case on is not in this case, right? It is in this case, yeah, because... But you just said this is something that's pending before the State Department. It's not pending before this Court. Pernix believes that the State Department inevitably will deem, you know, that the Pernix Phase 3 proposal, that Pernix was ineligible to submit a Phase 3 proposal because it did not meet, you know, the strictures of the Ombudsman Security Act. That's really the same issue, you know, that this Court is being asked to adjudicate. I understand there's a difference. What you're saying is that if we were to go ahead and adjudicate this case, it would make your future case, if you have one, easier to argue. It will probably resolve maybe an issue in that case. But that's different. I was asking you specifically whether the issue you've raised, this $1.5 million, is an issue in this case. And I think the answer is no. The answer is no, because we're aware that we would have to, you know, in all probability, you know, file a certified claim under the CDA and go through that process. That being said, you know, the Safeguard Base Operations, you know, case cited by the government, unpublished Federal Circuit 2019 case, that involved a completely separate appeal. Completely separate appeal, where this issue, as to whether Pernick's Federal LLC was an eligible offeror under Phase 3, directly relates, you know, to its ability to obtain that stipend, to which it believes it's totally entitled, having submitted a technically acceptable proposal. I would add, you know, for what it's worth, the Department of State— before the State Department, what happens to that claim if we were to dismiss you, dismiss a claim here? Well, I think what Pernick's would do, they would file, again, a certified claim under the CDA. We can't force them to act. It's been two years, you know, since, you know, the request for the stipend came in. Probably shouldn't even have had to have made requests. I would note that one other offeror, BL Harbert, Department of State did pay that stipend. I don't know what's going to happen with Cadel Construction, you know, the company that the Department of State has terminated its contract for convenience, you know, recently. But Harbert did get paid. Pernick's Federal LLC has not. And there's no contention that the proposal is not technically acceptable. The question is, were they eligible to submit it? Department of State says they weren't. PFL says we were. Is it possible they haven't paid your Section L10 cost recovery request yet because they're waiting to see whether or not you're going to succeed in reopening the competition for the contract and then receive the contract award? Because if you were to receive the contract award, then you would no longer be eligible under Section L10 for recovery of your bid proposal costs. Well, it's possible, Your Honor. But truthfully, we do not expect in any wise, you know, the RFP to be reissued. Right, but I'm just saying this whole time, while this litigation's been ongoing, you know, there was an off chance that you would eventually get the contract award and Section L10 cost recovery is strictly limited to those offerers that qualify under Phase 3 for a technically acceptable proposal, but don't get the contract award. Your Honor, you're absolutely correct. But again, I would point out it's been two years. So... The government in its reply brief doesn't challenge, I guess, your request for, if we were to agree that the case is moot, to have the underlying opinion vacated. They don't seem to oppose that. But at the same time, they suggest that maybe you're not asking for that. So I wanted to give you an opportunity to address whether you're asking for a vacate or in the event we were to say the case is moot, do you want the lower decision vacated? We would, your Honor. We would. And I would add, again, if we're forced to go through the CDA process, it's going to be a situation where the same arguments are going to have to be addressed. So there's an issue of judicial economy here, too, as well as whatever the State Department's actually going to do over in Turkey. We don't know. You know, so... Make one more point. Counselor, we want to be careful as to what we decide today, how that affects your outstanding interests that you may have in the future. But what it sounds like to me is that there's two separate, distinct actions pending. This appeal and the claim that you had before the State Department. They're separate and distinct. Is that true? We view them as intertwined. Because of the seminal issue of this appeal as to whether Pernick's Federal LLC was an eligible offeror under the Security Act, we absolutely anticipate that State would take a position, you know, that PFL is not entitled to that stipend, even though it submitted a technically acceptable proposal because it was not an eligible offeror. So we view these issues, this issue as intertwined. And we also view, you know, the $1.5 million stipend as tantamount, you know, to basically bid and proposal costs. The government made the point that we didn't specifically ask for B&P costs. Government is right on that. But the stipend, in essence, you know, was intended to provide what is tantamount to B&P costs. Does your complaint state that you're seeking bid preparation and proposal costs? It did not, Your Honor. Well, how can we grant you relief on something that you did? It's not in your complaint. Because we asked, you know, for other and further relief, a generic, you know, request, you know, for any relief the court could give. And we think if you were to reverse and remand, you know, that Court of Federal Claims might well look at our entitlement to that stipend and not force us, you know, frankly, to do a completely separate, you know, Federal Claims case. Are there other questions on mootness, Your Honor? I'd like to address a couple more things, if I may, in the time I have left. And that is, I'd like to remind the court that throughout this entire procurement process, PFL relied on the DOS's own regulations, which have not changed whatsoever. During the course of the litigation and appeal. And in particular, the DOSAR, Department of State Acquisition Regulation, which provided and provides that a prospective bidder, offeror, may be an individual organization or firm, a formal joint venture, in which the co-venturers have reduced their arrangement in writing, or de facto joint venture, where no formal agreement has been reached. But the offering entity, the offering entity, relies upon the experience of a related U.S. firm that guarantees performance. Again, that's from the Statement of Qualifications in the record. And it's at, you've seen it, I know, but, and let me see, I don't have the site right here. But PFL's reliance on this was eminently reasonable. You know, that the offering entity, you know, could be the phase three offeror. Then, you would come down to, you know, the issuance of, you know, the RFP that's resulted in the COPSI protest. And for the first time when that RFP came out, it included section L.23.2.1.10.1. That's that Appendix 07219. And that said, in two senses, two critical senses, to the extent an offeror relies on its related entities for meaningful involvement and contract performance, the Department of State considers those entities to be the offeror for purposes of SAM registration and for evaluation purposes under the solicitation. And that was not PFL's situation, where PFL was going to perform 100% of the contract work as opposed to its co-venturer guarantors, Pernix Group, Inc., and BE&K. And as if to foreclose any further inquiry, the Department of State added a second sentence, a note, really, stating for purposes of the solicitation, de facto joint ventures are not entities where both firms share in performance of the work but merely an arrangement where one firm guarantees the performance of the other. First sentence suggested clearly to PFL that it could be the offeror because PFL was going to do 100% of the contract work. The second sentence suggested, you know, the co-guarantors under the de facto joint venture were not offerors. So they relied on that. But the next point I'd like to raise in terms of blue and gold, and it's been an issue in this case, you know, let's suppose, you know, for the sake of argument, that the government is correct, you know, that regardless of what the documentation shows, that Pernix, writ large, submitted its phase two qualification materials in the name of the de facto joint venture. It was that de facto joint venture that was evaluated. You're into your rebuttal time. Oh, I'm sorry, Your Honor. That's okay. You can keep going. I'll keep going. You can use it up. Yep, I'll use it up. Okay. And let's suppose that PFL protested that knowing, you know, that it was impossible to register a de facto joint venture in SAM. And let's suppose they got some forum to agree. You know, you're right. Go ahead. State. You're going to have to amend that solicitation and permit this company to formally establish the de facto joint venture as an LLC and submit. Well, what would have happened? There's a latent defect in section M.1 of the solicitation. They basically said the phase two offeror and the phase three offeror. And I use the expression offeror in air quotes. They have to be the same. Demonstrably, a de facto joint venture for DOS purposes, an unincorporated entity, not even a contractual joint venture, is not the same, would not be the same as a formally established LLC joint venture. Let's call it Pernick's Federal Joint Venture LLC. Not the same. One is an entity. One is demonstrably not. So what would have happened? State would have said, you're still not eligible. You're still not eligible. So we think that blue and gold was not a part of this suit. And I'm past my time. But in any event, PFL thought that it could absolutely be the phase three offeror. OK. Thank you. Thank you, Your Honors. Counselor Weiser? Good morning, Your Honors. I'll start by addressing some of the mootness questions that the Court provided at the start of this argument. The key issue here is, what is the claim to relief? There's a difference between legal issues, which may or may not be overlapping and relevant. But the question is, what is the relief that is being sought in this case? And is there anything concrete that can be granted? Our position is there has never been a claim for bid prep and proposal costs in this lawsuit. And it's not just based upon the text of the complaint, although we think that's obviously dispositive. It's also because of the fact that we would have seen arguments and briefing at any lower stage of these proceedings about this stipend issue. Admittedly, the first time I personally became aware that this issue was even a dispute or unpaid was in my conversations with Mr. Howell over the last several weeks, discussing how we were going to proceed in light of the cancellation of the project. So this is not just omitted from the complaint. It was never raised in the briefing. There was never any evidence submitted about the lack of payment. There was never any argument presented by either party about the reasons for that lack of payment. Were you aware of the State Department claim pending? I was not, Your Honor. And so I'll be as transparent as I can be with my conversations with the State Department about this issue, understanding we don't have a body of evidence that I can point the court to to support those statements. But what the State Department has advised me is that the dispute over the unpaid stipend has nothing to do with the eligibility determination at issue here. Counselor on the other side says that the two claims are intertwined. And again, I will state that they are not. I have nothing in the record to point to because, again, this was not an issue that had been raised at any point before the briefing on the motion to dismiss. But there are other contracts that Pernix has with the State Department. There has been a termination for default. There have been claims and disputes over that termination for default. Is it true that the State Department is not addressing that question until the appeal here is resolved? That's just not true, Your Honor. That the State Department has advised me that this appeal and this proceeding has absolutely no relationship to the failure to pay the stipend. So you're telling me that if the State Department ultimately declines to pay out the Section L-10 costs, it'll have nothing to do with whether or not Pernix was an eligible offeror for Phase 3 purposes? Yes, Your Honor. What I've been advised by the State Department is that there... Because I could imagine a rationale for why they would kick out the request for L-10 costs on the ground that, well, you weren't a qualified offeror. There was a pre-qualified offeror under Phase 1, Phase 2, and that was the de facto joint venture. But the de facto joint venture didn't show up for Phase 3 and submit a proposal. It was something else, just PFL. And because you weren't a pre-qualified offeror, you get no L-10 costs. And I completely... You're telling me in this court that that will not be a rationale for why the State Department declines to grant their request for L-10 costs? I can make that firm commitment, Your Honor. It'll be if they decline. It'll be for some other reason, perhaps a review of the proposal and conclude that it wasn't actually a technically acceptable proposal or something like that. And I want to be careful because these are still pending disputes, and I don't want to commit the agency standing here at the podium. What I've been told I can commit the agency to is that they will not decline to pay on the basis that Pernick's federal or the joint venture was ineligible, that there is a possibility of offset related to a separate termination for default proceeding. There may be other issues that arise through that proceeding that the State Department's not aware of, which is why I hesitate to be firmer about some of the other eventualities. But the State Department has authorized me to state concretely that there will not be a decision that the eligibility determination is the basis for non-payment of the stipend, that they have already made that decision, and it will not come back for reconsideration from their perspective. Go ahead. I was just going to confirm that the government does not oppose a request to vacate the decision below. Is that correct? We do not. And admittedly, we don't see much consequence from this issue based on the fact that the regulation has been rescinded. We understand why it's a big issue for Pernick's, but writ large for the State Department's procedures, this is not something that's going to come back. So we have no position on vacater. Does the State Department have plans to reinstate the project at some time in the future? Not currently, Your Honor. I think there was some reference in the diplomatic note to a continued diplomatic presence in southeastern Turkey. Obviously, the State Department is continuing to reevaluate its needs on the ground. At the moment, there is no plan for a new consulate structure. Do you recall that there was plans for an embassy being built in another country? No, I don't believe so, Your Honor. I think maybe Pernick's made some reference to general activities in that area of the Middle East. What's going on here is that there was a plan for a new structure, a completely new consulate to be built. That has been canceled. There may be expansion of the facility. But the other thing I'll point out for the same reasons I just answered with Judge Stoll's question is if there is a new project and a new solicitation, we don't think that's likely, but even if there were, this regulation won't be present because it has been rescinded. The only reason we're talking about this is because there was an active solicitation that yielded a contract. There will not be this issue. The whole de facto joint venture concept has been removed from the regulations. That cannot recur. You gave us a copy of the diplomatic note to Turkey referencing that this contract had been terminated on April 29th, but you didn't give us an actual copy of the termination notice. Why not? That was just my judgment call, Your Honor. We have it. I thought that the diplomatic note would be a stronger assertion. That's more communication that you're sending along. It's not an actual official termination. We view... Well, I'll say that. We view that the diplomatic note is the official position of the United States government being presented to the government of Turkey. So we view that as having as much formality as the termination document. Our reason for providing the court with the diplomatic note was because it not only addressed the termination of the contract, but also addressed the fact that the project as a whole is canceled. The termination in and of itself just says, we're terminating your contract for convenience. It doesn't provide any explanation about why or whether there might be a reaward under the solicitation. So we viewed the diplomatic note as the more comprehensive document explaining not only was the contract terminated, but also the project as a whole has been terminated and will not be revived in its current form. So that's why we provided the diplomatic note to the court in lieu of the termination document. If the court has any questions on the merits, I can address them, but we believe mootness is dispositive here. If there are no questions, we'll ask for a dismissal. Thank you. Thank you. Counselor Howe? We've got three minutes time. About three minutes. What's going on? Oh, I'm sorry. You ran out of time. Yes. Okay. You're out of time altogether. Thank you, Your Honor. We thank you for your argument. Thank you. We thank all parties for their arguments.